Then the first case set for decision or set for argument is 1722 43 United States v. Bengus. Good afternoon your honors. My name is Eric Kreisman and I represent Arnold Bengus in this case. I'm going to talk a little bit about the restitution. The restitution is a portion of the appeal prior to this case because of a settlement of the forfeiture. And perhaps restitution components of the sentence. Perhaps restitution? Is restitution still an open issue? Restitution, the government has in the forfeiture agreement, the government is going to remit the money that it receives or a portion of the money that it receives from, paid on Bengus's behalf and will send it to South Africa. There's a separate agreement between the party, the Bengus parties in South Africa and Jersey in which South Africa, once it receives this amount, will write a letter to Judge Kaplan saying that they are satisfied with the amount of restitution received. And in our agreement with the United States, the Bengus's agreement with the United States, the government has agreed not to oppose an order, a motion for Judge Kaplan to enter an order stating that restitution has been satisfied. So there's no loose financial thread assuming that all of the things that were described take place. That's right, Your Honor. Okay, so we're talking about his appeal on the substantive reasonableness of the sentence that the district court imposed at resentencing, is that right? That's correct, Your Honor. And you'll also address the government's argument about the fugitive disentitlement doctrine? Yes, I can address the government's argument. Actually, I think that we laid out in our papers precisely the reasons why the sentence is substantively unreasonable. The court, we believe, gave insufficient weight to his declining medical condition. Judge Kaplan remarked that anyone at Mr. Bengus's age would have ailments, but the have only worsened as the court has seen through submissions with respect to the motion to dismiss the appeal under the fugitive entitlement doctrine. And there was no, I think the court did not give, did not mention the $5.9 million in for- I don't understand, how did you relate the something to the fugitive disentitlement, which you just said a second ago? Yes. What did you relate to it? Oh, I, well, what I related to- Health? What's that? Health issue? There was a health issue about his ability to travel. That was just something, that was an additional- You have, you're not saying the court relied on that? The court did not rely on that, no. But, but we had made submissions about Mr. Bengus's declining health and seriously declining health, you know, and all of the other collateral consequences of this very lengthy criminal case. Now, in addition- It is a guideline sentence though, right? And you agreed with the government initially that, about the guidelines range. The guidelines range is accurate. He's, but we disagree that Mr. Bengus, that the plea agreement is enforceable as to the appeal waiver. And the reason we disagree is that- Even without regard to the appeal waiver, if we're looking at what you agreed to as a range, sentencing range, this is now at the high end of that range, but it is a guidelines sentence range. Isn't that right? That's right. At the resentencing, Judge Kaplan added 11 months to the 46 month sentence. So to put it at the high end of the guidelines range in the plea agreement. And we're on abuse of discretion review, right? What? That's right. That's right. The other point though, that in light of the changed circumstances here with respect to the forfeiture and the restitution, which is something that we were not able to brief before the court until, or raise before the court until recently, there, I would like to analogize to United States versus Young, 932 Fed 2nd, 1035, a second circuit case from 1991, which holds the principle where a component of a sentence is invalidated on appeal. Um, the sentence, the defendant may be resentenced, um, so, so that the judge can, uh, consider the entire sentence, whether, uh- There was nothing invalidated here. Nothing was invalidated. The observed part. And in fact, there was additional behavior. That's correct. Criticized with respect to his observation that Mr. Benjes appears to have hidden assets. Absolutely. Absolutely. Um, but I, I'm just, I'm, I'm trying, I was trying to be somewhat creative on, on that, but I'm wondering if, if the, the changes in the, the fact that forfeiture has been satisfied, the fact that restitution may very well be satisfied. Um, and the purpose of this resentencing was because Mr. Benjes did not, uh, pay restitution. That was the issue that he knowingly did not pay restitution. Um- You're not saying that the court was not entitled to take into account the fact, the observation that Mr. Benjes appears to have moved assets in order to avoid, um, exposing them to the restitution obligation. Of course, we, we disputed that. Yes. But, uh, yes, of course, the court was able to decide that to rule on the facts as the court decided, uh, and to determine the facts as the court decided. So what would you say is the most, uh, is the component that renders this an abuse of discretion, the sentence, or substantially unreasonable? There were, there are a number of factors, but, um, in addition to the overlooking some of the, I think, and not, um, taking into account, uh, the, the, the time that, uh, Mr. Benjes previously served, the length of this case, his age, um, the amount he's already paid in initially, uh, to the South Africa, to the United States, the $7 million he paid in the South African case, uh, the $1.8 million that his son, David Benjes forfeited, uh, to the United States, the 1.24, 1.25 million- The original restitution order was for some 22 million though? It was for 22 million. So what's the total of the numbers you're reciting now? These are numbers that, um, that are the financial penalties that have been paid. I know, but what's the total? Can you tell me? Yes, I can tell you. Um, and the total would be 23.45 million. You're saying it's, it's even over what the original, uh, obligation? Yes. Although it's with forfeiture and restitution and including this case that was in South Africa. So, um, the, I felt, uh, but the, there was also the, um, you know, the fact that Judge Kaplan recognized that, um, Mr. Benjes is elderly and ailing, uh, and he imposed a sentence with the greatest reluctance, but at the same time, um, mentioned that Mr. Benjes should live in constant fear that one of these days there may be a knock at the door and a pair of handcuffs in his future. And he ought to feel that, um, there, I, I believe that there was too much, uh, emphasis over emphasis on the idea that Mr. Benjes tried to evade his restitution obligations, um, able to deal with the fugitive issue. Oh yes. The fugitive issue. Um, in none of the cases that the government, um, relies upon in, um, it's, it's brief. Do they have, uh, are there circumstances similar to here? Uh, Mr. Benjes, uh, unlike the defendants in those cases, Mr. Benjes had already served his 46 month sentence. He paid for, uh, forfeiture. He served his probationary term. How does that affect whether he's now a fugitive? Well, he, he long ago left, uh, the United States before this resentencing. Um, this is, this is many years ago that Mr. Benjes, his sentence, um, was at least concluded by 2008. But I mean, why does the fact that he has a prior, I mean, once you've served a sentence, you're free to become a fugitive. But Mr. Benjes didn't become a fugitive. Mr. Benjes was already in, uh, the UK. Well, and he, and partially because as, as we've argued, he can't come back because of his, because of his illness. Where is he now? He is in, uh, London in the UK. Um, and are you the lawyer who wrote and said, I think he may be in South Africa now in April or is that some other lawyer? No, that must've, that may have been, that was probably me. I don't know if I said South, did I say South Africa at the time? Because when I submitted the I don't remember the context that it was in that he's lived. I think he may be in South Africa now. I think he splits his time. I think he lives most of the year in Israel. So he did most of the year in Israel, the UK to South Africa. He hasn't traveled for, for, and how does he go between those three countries? He had traveled by airplane. So when his doctor gives us a letter that says he recommends that he refrained from flying, um, presumably that your client doesn't accept that advice. Is that right? No, no. He's accepted that advice. How did he get between those three countries then? He didn't take a boat, did he? No, he, I, but this was, this was before the onset of what I, before the, you know, more significant, uh, before his, uh, condition deteriorated. The only letter we have is, we have the, this is August 17. Right. He hasn't flown since then? No, no, your honor. You can represent. I can represent that. I can represent that he is in London. I can represent that he's been there months before. There's nothing in our record that says that until, well, I suppose this is now in our record, but presumably you were doing your best to show us that he isn't capable of flying. Yes, yes, your honor. We have nothing from him or his doctor that since, uh, August 17th, he hasn't flown. That's, that's correct. Although I could make that he wouldn't even take a ship because of health or it just takes too long health. Oh, he gets seasick. No, no, no, no. It's because he gets, because he does not travel because he has, he is in London. He's lost sight in his eye. He is, uh, he has trouble walking. If that is your honor's question, he can't, he just doesn't travel anymore. He stays in the UK. He has stayed in the Okay. So, so that, that's part of it. The, the, the other cases that the government relies upon talk about people who fled, uh, to one person fled to Israel during the pendency of an appeal, a promise to return in two weeks, didn't return for 13 months despite having been warned that to return and or be considered absconded. Uh, another person in anger, the case anger cited by the government fled to France prior to the surrender date. Clearly some are more egregious, but would you agree that with notice of a federal sentence, a person stays abroad and declines to come back, renders him a fugitive? The answer is yes. Although at, although I just, I believe that, that Mr. Benjus, uh, that judge Kaplan, and I may be mistaken on, on the record that judge Kaplan, um, ordered Mr. Benjus to come back after he sentenced him to imprisonment, which was not, uh, something that was foreseen at the trial. But having said that, yes, of course, if someone is, is ordered back, then, then yes, that could render them a fugitive. I don't believe that Mr. Benjus should be rendered a fugitive in this case though. And for, for all the reasons that we, I'm not clear. I thought you were agreeing he was a fugitive, but that the equities, um, weigh in his favor on dismissal. He's effectively a fugitive. Yes. Yes. No, no, I did say, I'm sorry. I maybe I didn't make myself clear. I'm saying when he was first, um, when he was first, when the re-sentencing first came about, I wasn't, uh, under the impression that he was a fugitive at that time. Uh, but I do understand that he was a fugitive when the sentence of imprisonment was imposed. That's all I was saying. But, um, in terms of the, the equities here, yes, I, I believe that compared to the cases that the government relies upon in saying, in, in trying to dismiss the appeal based on the fugitive entitlement doctrine, those cases are far different than the one, uh, that, uh, is the circumstances present here. Uh, in addition, um, I hope you'll kind of try to wrap it up a little bit. Oh yes. No, I, I, I, I think that I will rest on the papers unless anyone has any questions. Okay. Well, you're from the government. Then you have two minutes of rebuttal. Ms. Marta Savvy. Good morning. I may please the court. My name is Sarah Marta Savvy. I represent the United States in this appeal, though I was not counsel in the proceedings below. And I want to start with an important concession that the appellant just made, which is that Arnold Bengis, the appellant, is a fugitive. He was a fugitive at the time that sentence was imposed in July, 2017. He has refused to return to this jurisdiction, even though there is a pending sentence, a term of imprisonment that he is expected to face. And on that basis, this court does have the discretion to dismiss this appeal. Acknowledge that it's a discretionary judgment, right, about whether, and that also he already served a substantial sentence. He has been participating in the proceedings by effecting this global settlement. And he is an advanced age and you have not contested the letter about his health condition that was presented. Have you the authenticity of it or the veracity? No, we do not contest that. And we acknowledge that this is certainly a discretionary decision on this court's part, whether to dismiss this appeal or not. But we would note that it is particularly meritorious here to apply the Fugitive Disentitlement Doctrine because of Arnold Bengis's actions up to this point. Are you aware of any travel since August of 17? The government is not aware of any travel since August 2017. However, even if Arnold Bengis was prevented from traveling because of his health or due to other reasons, in other cases such as Ng, which was previously cited, and Zedner, which we cited in our papers, even someone who is physically prevented from coming into the jurisdiction of the United States to face charges can nevertheless have his appeal dismissed under the Fugitive Disentitlement Doctrine. But wasn't Zedner really quite different? I mean, Zedner was subject to a supervised release order and was given explicit permission to leave for two weeks for a funeral in Israel. He left the country knowing he had a passport problem and didn't have money to get back. He left. There was a willfulness finding there that no judge has made here to date. Isn't that correct? Certainly. But in both Ng and Zedner, the appellant in that case was physically prevented from coming into the United States. I think the principle still holds. In Ng, for example, the fugitive in that case was serving a term of imprisonment and so was prevented from traveling to the United States by the country that he was in. Well, again, both Ng and Zedner were prevented by their own actions from returning rather than by an illness or something imposed from the exterior. Isn't that right? That's right, but nevertheless... And therefore, there was a willfulness kind of... I mean, there was an explicit willfulness finding in Zedner, I don't recall in Ng, if there was that, again, no court has made here. Correct? Correct. There is no... And here we also have substantial compliance with Mr. Bengis having served a substantial term and having been out of the and also having just recently participated in the achievement of a global settlement of his financial obligations, right? Well, to speak to the appellant's participation in some of these court proceedings, he's really cherry-picked when he will abide by a court's order, when he will choose to participate in proceedings, and when he will ignore orders of the district court and a decision by this court. And I would note that Arnold Bengis had not paid a penny of his restitution up until his resentencing, even though... He paid forfeiture early on, though, didn't he? Hadn't he paid about $5 million before he left in 2009? That's right, but in 2013, the district court entered a restitution order and a deposit order, both of which were infirmed by this court, and both of which Arnold Bengis completely ignored. And at the point where he was directed to submit himself to the marshals to serve an additional term of imprisonment, he simply ignored that order as well. As to his health, the government can't speak to it, and all we have on the record are the statements made here today. You made this argument previously, right? Before the motions panel, that's right. And it was denied. That's right. And so, are there any new facts since then? There are no new facts, Your Honor, but the merits panel is entitled to review the decision of the motions panel, and indeed has done... When you say you made your argument, you mean your oral argument? No, we submitted papers. But not before the ruling? I'm sorry, we... Before the ruling? We submitted papers. Your brief was submitted? We submitted separate papers on the dismissal to the motions panel. The decision was then made, and that was prior to our submission of briefs on this question. But as I was stating to follow on my train of thought, this panel can certainly revisit the decision of the motions panel and has jurisdiction. In two cases that we cite, Brickhouse and Nelson, the merits panel revisited a decision of whether to enforce the appellate waiver provision in a plea agreement, even though the motions panel had already ruled on the issue. But there are no new facts? There are no new facts. With respect to the financial obligations that have caused the consent withdrawal of part of this appeal, does the government agree that Mr. Bengis has thereby satisfied his outstanding financial obligations related to this case? Assuming that all the steps that were described by Mr. Kreisman take place, yes, the government will not oppose entry of an order stating that he has satisfied his financial obligations. Of course, the term of imprisonment is up for review. And is there a deadline on the satisfaction of those obligations? Is there money set aside right to satisfy them? I believe there's a 30-day deadline pursuant to the stipulation that was entered. And I don't know the precise status of how the money has moved and whether it is in the custody of the government. I understand. I don't believe it is yet in the government's custody, but steps have been taken consistent with the stipulation. So the 30 days would run when? I do not know the precise date, but we are well within the 30 days. Thank you. Even if this court does not exercise its discretion to dismiss this appeal under the fugitive disentitlement doctrine, we nevertheless believe that this appeal ought to be dismissed by enforcing the appellate waiver provision in the plea agreement between the appellant and the United States. The appellant agreed that if he received a total term of imprisonment within the sentencing guidelines range of 46 to 57 months, he would be prevented from pursuing an appeal of that sentence. That is precisely what happened here. He received a within-guideline sentence, and so under the provisions of the plea agreement, this appeal ought to be dismissed. Even if not dismissed on that basis or on the basis of the fugitive disentitlement doctrine, the government nevertheless believes that the sentence imposed was substantively reasonable. Appellant is essentially trying to substitute his own judgment for that at the district courts, and that's not the purpose of review on appeal. There is substantial deference given to the district court's determination and the weighing of the sentencing factors, and this review is particularly deferential when the sentence is within the guidelines range as it is here. The weight of those factors is firmly committed to the discretion of the district court. Here, Judge Kaplan considered the appropriate 3553A factors, he articulated his reasoning, and he did not consider any impermissible factors. At bottom, substituting any one person's judgment for that at the district courts is not a proper basis. Are there any limitations that you'd see? This is an unusual circumstance in which a sentence had been imposed and served, and then years later, an additional 11 months was added to the sentence based in part on some conduct the district court found to have occurred in the interim. I just wonder whether the district court was free to just consider afresh all the 3553 factors, or whether there's some greater kind of anchor in what had gone before, and there may be some kind of limitations. I'm grasping, but it's just an unusual circumstance, and I wonder if you could comment. I understand and agree with Your Honor that this is a unique set of facts that we're presented with, but the statute under which the resentencing occurred states that any sentence which might originally have been imposed can be imposed by the district judge. By the terms of that statute, which was Congress's vehicle for creating a remedy for people who have ignored the restitution obligations, it seems to me from a plain reading of the statute that the district court could revisit all aspects of the sentence, including the term of imprisonment, anew, as if it were the sentencing that had occurred in 2004. And so on that basis, I don't think there's a reason to put this case in a separate category just because there was a sentencing and a resentencing. In fact, I'm sure Congress envisioned that when it put in place section 3614 and 3613A. And so for all those reasons, we believe that the sentence is substantively reasonable, but that this Court did not even reach that question because this appeal ought to be dismissed. And if there are no further questions, the government rests on its submission. Thank you very much. Mr. Kreisman, you reserved two minutes. Thank you, Your Honors. Just to provide some additional insight to the Court about where the money is and the flow of how the money is supposed to go, there's supposed to be the payment from the trusts in Jersey to the government of Jersey, which would then make the payment to the United States. So to the extent that there is any delay at this point, the payment has been made to the government of Jersey. It's just I don't know whether it's been received by the United States government or not. What's the deadline on all these transactions occurring? This is from October 7th or 6th? I believe whenever the Court entered the order, so I think that's right. Other than that, I have no rebuttal unless there's a question. I have a question actually. Sure. The government mentioned that Mr. Bengis ignored a 2013 order made by the District Court. Do you agree? I don't agree, and I don't agree because as we set forth in papers that were submitted to Judge Kaplan, in very detailed fashion, the trustees of the trusts and the court in Jersey found that Mr. Bengis was neither a beneficiary of the trusts nor did he control the trusts. But that in part was of his own doing, is what the District Court found, isn't that right? That is what the District Court found, although we've argued otherwise, but that's what the District Court found. What about waiver? You want to say something about the appeal waiver? Yeah, that's what I was going to say. Oh yes, the appeal waiver. In this case, the government used South Africa to argue for a forfeiture where it couldn't otherwise, under the plea agreement. And because of the government's breach of the plea agreement, Mr. Bengis's waiver of appeal is unenforceable. But the government was responding to Judge Kaplan's questions. I don't, but yes, they were responding to Judge Kaplan's questions, but there's context to this because the United States, because the whole point is that there was a conversation between the representatives of South Africa and the U.S. Attorney's Office where the U.S. Attorney's Office explained that it could not enforce restitution or Judge Kaplan's restitution order in Jersey. And then South Africa then prepared an extensive brief advocating for forfeiture, which we argued should not have been permitted to be submitted into court because the victim did not have a right to submit legal briefing on forfeiture, and for a number of reasons that we put in the brief. The prosecutor also, the United States also contacted the Chief of Money Laundering and Asset Forfeiture to request approval to remit forfeiture as restitution if the forfeiture order was granted. This was a concerted effort. I understand Judge Kaplan's statements were that I had made out some nefarious scheme. It's not a nefarious, you know, I don't characterize it as that, but there was certainly coordination in this case between the United States and South Africa in requesting forfeiture so that it could accomplish the restitution, enforcement of the restitution order. You say that was precluded by the plea agreement? Yes, I do. Because the forfeiture amount was agreed to in the plea agreement. And the government... If we don't think the plea agreement was breached, do you think by its terms it bars this appeal? Yes. Okay, thank you very much. We have the arguments well argued and we'll reserve decision.